IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARGARET J. BROWN, )
 )
      Plaintiff, )
 )
v. ) 1:12CV1081
 )
CAROLYN W. COLVIN, )
Acting Commissioner of )
Social Security, )
 )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff Margaret J. Brown ("Ms. Brown") commenced this action on October 2, 2012, requesting judicial review of a final decision of the Commissioner of Social Security denying her claim for Social Security disability benefits. (Doc. 1 (Compl.) ¶ 1.) Before the Court are Ms. Brown's Motion for Summary Judgment (Doc. 9) and the Commissioner's Motion for Judgment on the Pleadings (Doc. 12). The administrative record has been certified to the Court for review. The Court heard oral argument by counsel for the parties on their motions on March 3, 2015. For the reasons set forth below, the Court denies Ms. Brown's motion and grants Defendant Commissioner's motion.

I.      **Procedural History**

On September 28, 2009, Ms. Brown filed an application for disability insurance benefits, alleging a disability beginning September 30, 2006. (Tr. at 22, 128-33, 152.[1]) Following a denial initially and upon reconsideration, Ms. Brown requested and obtained a hearing on January 19, 2011 before an Administrative Law Judge ("ALJ") (Tr. at 22, 37-61.) The ALJ denied Ms. Brown's application on March 17, 2011. (Tr. at 22-33.) The Appeals Council denied her request for review on August 6, 2012 (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Ms. Brown then filed the present action on October 2, 2012. (Doc. 1.)

II.     **Standard of Review and ALJ Process**

This Court's review of the Commissioner's denial of benefits is authorized under 42 U.S.C. § 405(g). *Hancock v. Astrue,* 667 F.3d 470, 471 (4th Cir. 2012). The scope of review, however, is extremely limited. In applying this standard, reviewing courts "do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [their] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (second alteration in original). A reviewing court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard. Substantial evidence is such "evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). It is considered more than "a scintilla of evidence" but is less "than a preponderance." *Id.* "'Where conflicting evidence

---

[1] Transcript citations refer to the certified administrative record.

2

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].'" *Id.* (alteration in original) (quoting *Johnson,* 434 F.3d at 653).

In evaluating disability claims, the Commissioner uses a five-step process which is well-established. *Hancock*, 667 F.3d at 472. In sequence, the Commissioner asks "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock*, 667 F.3d at 472. The claimant bears the burden of production and proof in steps one through four; the burden shifts to the Commissioner in step five "to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience." *Id.* at 472-73. If the claimant's disability can be determined at any step, the inquiry need not continue to subsequent steps. *Id.* at 473. Before going from step three to step four, the Commissioner assesses the claimant's "residual functional capacity" ("RFC"), a determination of what the claimant is capable of doing. The RFC is used at step four and at step five when the claim is evaluated at those steps. *See* 20 C.F.R. § 404.1520(a)(4).

### III.     **The Decision of the ALJ**

The ALJ found that Ms. Brown had not engaged in substantial gainful activity since the onset date through date last insured (step one) and had the following severe impairments: degenerative disc disease; fibromyalgia; arthritis; carpal tunnel syndrome; hypertension and hypothyroidism (step two). (Tr. at 24.) The ALJ did not find depression or anxiety to be a severe impairment. (Tr. at 26-27.) The ALJ also found that her impairments, alone or in

3

combination, did not meet or equal a listed impairment (step three). (*Id.* at 27.) The ALJ determined that Ms. Brown had the RFC to perform light work with the following limitations: a sit/stand option allowing her to sit 30 minutes at a time and stand as needed; able to perform frequent but not constant fingering; and able to have occasional exposure to hazards. (*Id.* at 27-28.) The ALJ found that Ms. Brown was unable to perform her past work (step four); however, considering her age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing, including mail clerk, nut and bolt assembler, and cashier with a sit/stand option (step five). (*Id.* at 31-33.) Thus, the ALJ concluded that Ms. Brown was not disabled. *(Id.* at 33.)

## IV. Discussion

Ms. Brown asserts two grounds in support of her motion: (1) the ALJ erred in his RFC determination that Ms. Brown could perform light work despite contrary medical opinions before the ALJ; and (2) the ALJ erred in his finding that depression was not a severe impairment and therefore had no impact on her residual functional capacity. Ms. Brown urges remand on the second ground for a psychological consultative examination. (Doc. 10 at 3-11.) The Court will address each ground in turn.

### A. Weight of Medical Opinions

Ms. Brown argues that the ALJ's RFC finding is contradicted by the opinions of Dr. McDonald, her primary care physician, and Dr. Mills, a consultative examiner, as well as evidence of her surgeries and ailments. She alleges that the ALJ failed to discuss the factors

4

set forth in 20 C.F.R. § 404.1527(d) when he evaluated and weighed these opinions.[2] (Doc. 10 at 5-6.)

Under the Treating Physician Rule, the Commissioner generally gives more weight and deference to the opinion of a treating medical source. 20 C.F.R. § 404.1527(d)(1)-(2). When that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence, the ALJ must give the opinion controlling weight. *Id.* § 404.1527(d)(2). If an opinion is not given controlling weight, the ALJ applies the following factors to determine the weight to give the opinion: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; 20 C.F.R. § 404.1527(c)(2).

20 C.F.R. § 1527(d) does not require an ALJ to discuss the various factors in evaluating opinion evidence, only that such factors be considered. *See Hendrix v. Astrue*, No. Civ. A 1:09–01283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010) ("[A]n express discussion of each factor is not required as long as the ALJ demonstrates that he applied the § 404.1527(d) factors and provides good reasons for his decision."); *Overcash v. Astrue*, Civil No. 5:07–CV–123, 2010 WL 5904394, at *6 (W.D.N.C. May 21, 2010) (Keesler, M.J.) ("While an ALJ's decision need not explicitly discuss each factor, it must justify the amount of weight afforded with specific

---

[2] After the ALJ's decision, section 404.1527(d) was re-designated as paragraph (c) without change. Rules and Regulations (S.S.A.), 77 Fed. Reg. 10651, 10656 (Feb. 23, 2012) (effective Mar. 26, 2012). The Court will cite to 20 C.F.R. § 404.1527(d) in effect at the time of the ALJ's decision.

5

reasons."), *report and recommendation adopted*, No. 5:07-CV-123, 2011 WL 815789 (W.D.N.C. Feb. 28, 2011).

Here, the ALJ determined that the opinions of Drs. McDonald and Mills were entitled to little weight, finding that they were inconsistent with the physicians' own treatment notes as well as the other evidence of record. (Tr. at 30.) The medical records include evidence that, following her 2006 fusion surgery, Ms. Brown had good alignment and she reported that the surgery had provided her significant pain relief. (*Id.* at 208, 307.) Dr. Goldberger, who treated Ms. Brown from 2006–2009, found that the issue with her thumbs was mild and that she had good extension, flexation and rotation of her neck and lumbar spine as well as normal strength in all extremities. (*Id.* at 218-20, 227-33.) Although he continued to treat her pain symptoms as she was not pain-free, Dr. Goldberger released Ms. Brown for light work part-time on March 17, 2009, noting she was "currently available for employment."[3] (*See id.*; *see also* Tr. at 207-08, 307, 310, 375.)

Additional evidence supporting the ALJ's assignment of less weight to the opinions of Drs. McDonald and Mills includes: (1) Ms. Brown's report to Dr. Goldberger that she was doing well in November 2008, following her CTS (carpal tunnel syndrome) surgery; (2) in August 2009, Dr. Moose opined that her thumb ailment was minor; (3) Dr. Mills noted she was able to pick up pennies, turn pages and use a screwdriver; and (4) a 2009 cervical spine

---

[3] Dr. Goldberger saw Ms. Brown more than a dozen times, from at least August 9, 2006, just before the time she alleges she became disabled (September 30, 2006), through at least December 19, 2009, after the time she filed her claim for disability (September 28, 2009). (*See* Tr. at 218-21, 227-34, 249-50, 258-59, 261-64, 267-76, 309-13, 375-76.) According to Ms. Brown, she began to see Dr. McDonald more often after she stopped seeing Dr. Goldberger in December 2009. (Doc. 10 at 7.) This is consistent with the record, which reflects Dr. McDonald saw Ms. Brown relatively few times prior to her date last insured. (*See, e.g.*, Tr. at 212-13, 365-66.)

6

MRI demonstrated a small disc protrusion but was otherwise fairly normal. (Tr. at 229, 233, 298-99, 359.)

The ALJ specifically considered the consistency of the opinions of Drs. McDonald and Mills with the record as a whole as well as the supportability of those opinions, providing examples of inconsistency, which are factors listed in § 404.1527(d). (Tr. at 30.) While Ms. Brown may disagree with the weight afforded to certain opinions, re-weighing opinion evidence is not within the province of the Court. *See Johnson*, 434 F.3d at 653 (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ). Because Ms. Brown has shown only disagreement, not error, in the consideration of the medical opinion, she has failed to establish that remand is warranted on this issue.

### B. Impairment Severity: Depression and Anxiety

Ms. Brown next argues that the ALJ erred in failing to find her depression and anxiety to be a severe impairment at step two "and therefore [they] had no impact on her residual functional capacity." (Doc. 10 at 8.) She avers that the record supports a finding that her mental health condition was well-documented and that, at a minimum, the Court should remand her case for a psychological consultative examination. (Doc. 10 at 8-9.) Specifically, she argues that the treatment notes of her primary care physician, Dr. McDonald, note sleep, mood and personality disturbances, anxiety, panic attacks, and difficulty concentrating. Dr. McDonald assigned (1) a slight functional limitation to Ms. Brown's activities of daily living, (2) marked difficulties in maintaining social functioning, (3) constant deficiencies of concentration, persistence or pace, and (4) continual episodes of deterioration or

7

decompensation. (*Id.*) Although Ms. Brown does not cite the source at this point in her brief, she tracks the findings and opinions of Dr. McDonald in the latter's September 10, 2010 "Residual Functional Capacity Questionnaire." (*Compare* Doc. 10 at 8-9 *with* Tr. at 351-56.) Ms. Brown does not reference the consultative examination of Dr. Mills in support of this argument. Dr. Mill's examination report did not include a diagnosis of depression or anxiety. (*See* Tr. at 299.)

Ms. Brown states that Dr. McDonald's office notes indicate she complained of symptoms of depression and anxiety during almost every office visit. (Doc. 10 at 9.) However, "subjective complaints, standing alone, are insufficient to establish the existence of a severe impairment at step two." *Kitch v. Astrue*, No. 10–cv–01862–REB, 2011 WL 4434972, at *3 (D.Colo. Sept. 23, 2011) (citing Social Security Report 96–3p, 1996 WL 374181 at *2); *see also Munson v. Astrue*, 2008 WL 5190490, at *4 (E.D.N.C. Dec. 8, 2008)(explaining that the ALJ properly discounted medical opinion where diagnosis of depression was based, in large part, on the claimant's subjective complaints). Nor does the mere fact that a claimant was or may have been diagnosed with a condition sufficient to support a finding of disability. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (holding that the diagnosis of a condition, alone, is insufficient to prove disability, because there must also be "a showing of related functional loss"); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis . . . says nothing about the severity of the condition.").

The Social Security Administration measures severity according to functional limitations imposed by medically determinable mental impairments. Functional limitations are assessed by using the four broad functional areas: (1) activities of daily living; (2) social

functioning; (3) concentration, persistence or pace; (4) and episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3) (referencing 12.00C of the Listing of Impairments). An impairment is "not severe" if it constitutes only "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). If the limitation in the first three functional areas is rated as "none" or "mild" and "none" in the fourth functional area, an ALJ will generally conclude the mental impairment is not severe, unless the evidence otherwise indicates there is more than a minimal limitation on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520 a(d)(1).

In this case, the ALJ properly considered the four broad functional areas in evaluating Ms. Brown's mental disorders. The record shows that she had mild limitations in the first three functional areas and that she experienced no episodes of decompensation of extended duration. Ms. Brown and her mother reported that she walked her dog, went to church, and performed household chores (functional areas one and two). (*See* Tr. at 51, 53, 163, 170.) There is also evidence that Ms. Brown not only was able to study the Bible but also had no episodes of hospitalization for mental health treatment. Similarly, the record contains evidence that Ms. Brown was alert and oriented, had normal judgment and insight, normal memory and normal mood or affect (functional areas three and four). (Tr. at 26, 163, 171, 212, 278-80, 298.)

Although Ms. Brown places great emphasis on Dr. McDonald's September 12, 2010 assessment, the ALJ noted that this assessment was completed more than eight months after her date last insured ("DLI") and, of note, occurred at a time when she was experiencing

9

personal stress from a recent fall and the death of a family member. (Tr. at 26.) Thus, any worsening of her mental health condition was found by the ALJ to be situational.[4] (*Id.* at 26.) The fact that she was prescribed medication for her mental health conditions does not address their severity or demonstrate any attendant functional loss. *Brewton v. Astrue*, No. 1:09-cv-188, 2010 WL 3259800, at *8 (W.D.N.C. Jul. 26, 2010)(noting that "prescriptions in and of themselves were not sufficient to establish that her depression was severe in the absence of evidence showing that the impairment impacted her ability to perform basic work activities"). Notably, Dr. McDonald's treatment notes state that the prescribed medications were effective. (Tr. at 364, 367.)

Ms. Brown quotes from *Hamilton v. Astrue*, No. 2:10CV00009, (W.D. Va. Nov. 10, 2010), as follows: "In this case, the fact that Hamilton did not seek additional treatment beyond the potentially inadequate long-term care being provided by his primary physician was not an appropriate basis for assuming he retained the functional capacity to perform light work." (Doc. 10 at 10 (quoting *Hamilton*, 2010 WL 4669014, at *5).) Preceding this sentence, however, was the court's observation that "significant evidence exists in the record to question the status and treatment of Hamilton's mental impairments." *Hamilton*, 2010 WL 4669014, at

---

[4] To establish a right to Social Security disability benefits a claimant must show that she became disabled before her DLI. *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012) (citing, *inter alia*, 20 C.F.R. § 404.131(a)). Of note, "[m]edical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability arising before the claimants DLI." *Id.* at 340-42 (noting, however, that the claimant in *Bird* had no medical records prior to his DLI and that post-DLI medical evidence is admissible when it permits "an inference of linkage with the claimant's pre-DLI condition"). Here, the ALJ, in determining the RFC, quoted Dr. McDonald's notes from the September 10, 2010 RPC assessment that Ms. Brown "has presented lately with worsening of her emotional state due to recent deaths in her family this year," which would be 2010, after the DLI. (Tr. at 30; *see* Tr. at 352, 356.)

10

*5.  The ALJ in *Hamilton* had already determined the claimant suffered from severe impairments including major depressive disorder and generalized anxiety disorder and the ALJ had not only the primary treating physician's opinion but also that of a psychiatrist.  *Id.* at *1, 4.  Here, the ALJ did not assume a lack of severe impairment based on lack of treatment from a mental health professional alone but rather considered that fact as one part of his review of the record as a whole, including Ms. Brown's reported activities.  (Tr. at 26, 30.)  While not precluding a finding of severe impairment, it is not improper for the ALJ to note that a claimant did not seek mental health treatment from a psychiatrist or a psychologist or attend counseling.  *See Clark v. Astrue*, No. 3:12-cv-00122, 2012 WL 6728264, at * 4 (W.D.N.C. Nov. 2012) (explaining the fact Plaintiff was never referred to a mental health clinician was an indication that Plaintiff's condition was controlled by medication and that it was not severe); *Brewton*, 2010 WL 3259800, at *8.

If, however, the ALJ did err in failing to find Ms. Brown's depression and anxiety to be severe impairments, such error is harmless.  *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error").  A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the fact-finder will proceed to step three.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").  Since Ms. Brown has at least one acknowledged severe impairment, the ALJ was obligated to consider "the combined effect of all of [her]

11

impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B); *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989). Ms. Brown argues that the ALJ erred in determining that "depression was not a severe impairment and that it therefore had no impact on her residual functional capacity." (Doc. 10 at 8.) Here, the ALJ's decision specifically stated that all of Ms. Brown's symptoms were considered and specifically evaluated her mental impairment in determining the RFC. (Tr. at 28, 30.)

Ms. Brown has failed to carry her burden at step two of establishing her depression and anxiety as severe impairments, and therefore her request for remand for a psychological consultative examination is denied. For the reasons outlined above the Court enters the following:

### Order

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, that Plaintiff Margaret J. Brown's Motion for Summary Judgment (Doc. 9) is **DENIED**, and that Defendant Acting Commissioner of Social Security Carolyn W. Colvin's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED**. A Judgment dismissing this action will be entered contemporaneously with this Order.

This, the 13th day of March, 2015.

/s/ Loretta C. Biggs
United States District Judge